**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 24-21143-CV-WILLIAMS**

KARTIK SHAH, *et al.*,

    Plaintiffs,

v.

SPIRIT AIRLINES, INC.,

    Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Spirit Airlines, Inc.'s ("***Spirit***") Partial Motion to Dismiss Plaintiffs' Amended Complaint (DE 20) ("***Motion***") to which Plaintiffs Kartik Shah ("***Kartik***"), Purvi Shah ("***Purvi***"), and minor A.S. ("***A.S.***") (collectively, "***Plaintiffs***") filed a Response (DE 23) and Spirit filed a Reply (DE 28).  For the reasons set forth below, Defendant Spirit Airlines, Inc.'s Motion (DE 20) is **GRANTED IN PART AND DENIED IN PART**.

    **I.  BACKGROUND**

On November 4, 2023, Plaintiffs were passengers aboard an aircraft owned and operated by Defendant from Miami, Florida to Newark, New Jersey. (DE 15 at 3.)  While speaking their native language of Gujarati and wearing red bracelets distinctive to their Jain and Hindu religions, Plaintiffs, American citizens of Indian descent, boarded the plane and sat in their designated seats in the first two rows of the aircraft. (*Id.*)  Upon taking their seats, Plaintiffs report that the lead flight attendant confronted the family and "aggressively" stated, "I need to see your boarding passes . . . I need to see if you belong in these seats." (*Id.*)  After showing their tickets to the flight attendant and confirming they

were seated in the correct place, the flight attendant began "aggressively harassing" A.S., an eleven-year-old minor, about stowing a small magazine bag in an overhead compartment.  (*Id.*; DE 20 at 1.)  Minutes later, the flight attendant returned to Plaintiffs demanded that they, and no other passengers, disembark the aircraft or "the police would be called to arrest them."  (DE 15 at 4.)  Despite Kartik's and Purvi's attempts in seeking clarification as to the reason why Plaintiffs were instructed to leave, the flight attendant called the United States Customs and Border Protection and the Miami-Dade County Police Department.  (*Id.*)  Soon after, federal and county officers boarded the aircraft and spoke with Plaintiffs.  (*Id.*)  According to the Amended Complaint, at the behest of Spirit's flight crew, officers instructed Kartik to exit the plane.  (*Id.*)  At some point A.S., who has severe asthma, started crying and hyperventilating.  (*Id.*)  After speaking with Kartik outside of the aircraft for an unspecified amount of time, officers directed him to return to his seat with his family to continue their flight home to New Jersey.  (*Id.*)

As a result of this incident, Plaintiffs report that they were traumatized and humiliated.  (*Id.*)  Moreover, they allege that Spirit's crew members laughed as A.S. cried and assert that Spirit's crew members ignored Plaintiffs throughout the flight, failing to speak or make eye contact with them as the crew refused to serve Plaintiffs with any water or snacks despite providing refreshments to other passengers in Plaintiffs' row.  (*Id.*)  Based on these events, on March 26, 2024, Plaintiffs commenced this civil action against Defendant seeking relief for the purported harassment and discrimination they experienced due to their national origin and color.  (DE 1.)  Then, on June 4, 2024, in accordance with Federal Rule of Civil Procedure 15(a)(2) Plaintiffs filed their Amended Complaint (DE 15) alleging racial discrimination in violation of 42 U.S.C. § 1981 ("**Count**

*I*"), negligence ("**Count II**"), and intentional infliction of emotional distress ("**Count III**"). (DE 15 at 5–11.)  In response, Spirit moves to dismiss Plaintiffs' claims as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) ("**Rule 12(b)(6)**").

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels, and conclusions."  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.") (citations omitted).  Rule 12(b)(6) does not allow dismissal of a claim because a court anticipates "actual proof of those facts is impossible," but the "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In ruling on a 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that she is entitled to relief. *Twombly,* 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id*. In determining whether a complaint states a plausible claim for relief, the court draws on its judicial experience and common sense. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

In the instant Motion, Defendant argues that dismissal of Plaintiff's Amended Complaint is warranted because Plaintiffs allege their claims in the form of an impermissible shotgun pleading and fail to sufficiently allege the necessary facts to support their state law claims. (DE 20 at 7–13.)

#### A. *Shotgun Pleading.*

First, Defendant asserts that Plaintiffs comingled multiple claims within the same counts and, as a result, run afoul of the pleading requirements set forth in Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure ("**Rule 8**" and "**Rule 10**"). (*Id.* at 7–8.) Pleadings in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" are disparagingly referred to as "shotgun pleadings," and such pleadings may be dismissed pursuant to Rule 8(a) and Rule 10(b).[1] *Anderson*,

---

[1] Rule 8(a)(2) requires litigants to include "a short and plain statement of the claim showing that the pleader is entitled to relief" in a complaint. Fed. R. Civ. P. 8(a)(2). Further, a complaint must "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances" pursuant to Rule 10(b). Fed. R. Civ. P. 10(b). The requirement of "a short and plain statement of the claim" allows defending parties to identify the claims against them and answer with responsive pleadings. *See* Fed. R. Civ. P. 8(a)(2); *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (noting

77 F.3d at 366; *P&M Corp. Fin., LLC v. L. Offs. of David J. Stern, P.A.*, 2016 WL 1045826, at *2 (S.D. Fla. Mar. 16, 2016) (shotgun pleadings force a court "to sift through the facts presented and decide for itself which are material to the particular claims asserted."); *Weiland*, 792 F.3d at 1325.  The Eleventh Circuit recognizes four (4) types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

In this instance, a review of Plaintiff's Amended Complaint confirms that Spirit has adequate notice about the nature of Plaintiffs' claims and there is no violation of the pleading requirements of Rule 8 and 10.  Each claim in the Amended Complaint is separated and labeled with headings notifying Defendant of the underlying basis and

---

that rules of procedure "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading.") (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citations omitted)).

theory asserted against it. For example, Count I is based on "[r]acial discrimination in violation of 42 U.S.C. § 1981", Count II is premised on "[n]egligence" and Count III relies on a "[i]intentional infliction of emotional distress" theory. (DE 15 at 5, 8, 9.) While there are instances in Count I where Plaintiffs mention "they were harassed," throughout Count I Plaintiffs expound that they suffered certain injuries as a result of Defendant's "intentional, purposeful discrimination" or "intentional racial discrimination" and not harassment. (*Id.* at 7–8.) Moreover, any references to "racial profiling" and "harras[ment]" in Counts II and III reasonably appear to characterize Defendant's conduct, through the *respondeat superior* doctrine, to be negligent and extreme within the confines of two separate theories of liability (i.e. negligence and intentional infliction of emotional distress). As demonstrated by a recent Eleventh Circuit case, there is no "technical exactness" requirement in pleading and mere references to being "harassed" do not create a meaningful impediment to Defendant's understanding on Plaintiffs' claims. *Charles v. GEO Grp.*, 2024 WL 1619911, at *3 (11th Cir. Apr. 15, 2024) (citing *DeLoach v. Crowley's Inc.*, 128 F.2d 378, 380 (5th Cir. 1942)) (concluding that while some pleadings may not be models of efficiency or specificity, they may still adequately put defendants on notice of claims against them). Accordingly, the Court concludes that it is not "virtually impossible" to understand Plaintiffs' claims and the Amended Complaint is not an impermissible shotgun pleading that warrants dismissal under Rules 8(a)(2) and 10(b). *Weiland*, 792 F.3d at 1325 ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.") (citations omitted).

## B. *State Law Claims*[2]

### i. *Negligence.*

Next, Spirit misinterprets Plaintiffs' negligence claim to be a claim for negligent infliction of emotional distress ("**NIED**"), arguing that Plaintiffs failed to allege sufficient facts to support all elements required to state a NIED claim.  (DE 20 at 8–10.)  Spirit misses the mark in raising any meaningful defense to the actual claim set forth in the Amended Complaint—Plaintiffs' negligence claim—by focusing on facts and information absent from the record.  In the Motion, Spirit argues and cites cases where courts analyzed NIED claims, failing to present a single case or argument pertinent to the actual negligence claim present in this action.  Moreover, because courts in the Eleventh Circuit do not consider arguments raised for the first time in reply briefs, the Court will not consider Spirit's argument raised in its Reply as those arguments are considered waived.  *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *see also United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").  Accordingly, the Court declines to dismiss Count II of the Amended Complaint.

---

[2] Although there is a general deference to state courts on issues of state law, federal courts can exercise supplemental jurisdiction over state-law claims when such claims "arise out of a common nucleus of operative fact with a substantial federal claim." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022) (quoting *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006)). Based on the allegations contained in the Amended Complaint, the Court finds Plaintiffs' state-law negligence and intentional infliction of emotional distress claims arise out of a common nucleus of operative facts present in Plaintiffs' federal discrimination claim. As such, the Court is permitted to exercise supplemental jurisdiction over Counts II and III.

### ii. *Intentional Infliction of Emotional Distress*

Lastly, Spirit argues that Count III should be dismissed because Plaintiffs fail to plead sufficient facts to state a claim for intentional infliction of emotional distress. (DE 20 at 5–8.)  Under Florida law, the elements of intentional infliction of emotional distress include (1) intentional or reckless conduct (2) that is "outrageous" (3) causing the victim emotional distress (4) that is "severe." *Kim v. Jung Hyun* Chang, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citations omitted).  Here, Spirit challenges the sufficiency of Plaintiffs' allegations regarding Defendant's extreme or outrageous conduct.

In Florida, "whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact," which may be properly decided at the motions-to-dismiss stage.  *Liberty Mut. Ins, Co. v.* Steadman, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007).  In determining what qualifies as outrageous conduct, Florida courts apply an "extremely high standard".  *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citation omitted).  Liability is found only where "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Metro Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

Plaintiffs allege Spirit engaged in extreme and outrageous conduct by harassing, discriminating against, and removing Plaintiffs from the aircraft due to their race and national origin. (DE 15 at 10.).  Based on the Amended Complaint, Spirit's personnel and flight crew asked Plaintiffs, and no other passengers, to present their airline tickets upon boarding the aircraft.  At some point, Spirit's crew even dispatched federal and local law

enforcement officers to report to the aircraft, which led to officers asking Kartik to exit the aircraft.  As a result of this public spectacle, A.S. became upset and Plaintiffs allege that they endured numerous injuries, including embarrassment, public humiliation, anxiety, and severe mental and emotional distress.

While this alleged conduct, if true, is repugnant and may prove that that Defendant improperly discriminated against Plaintiffs based on their race, such actions do not constitute "outrageous conduct" under Florida law.  Within the context of racial discrimination, Florida courts have held that reprehensible, objectionable and offensive conduct, such as the use of racial epithets and refusing service to customers because of their race do not rise to the level of "outrageous" conduct to support a claim of intentional infliction of emotional distress.  *See e.g.*, *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. Dist. Ct. App. 1980) (ruling that the use of humiliating language, vicious verbal attacks, racial epithets, such as the n-word are extremely reprehensible but do not rise the level of outrageousness to support a claim of intentional infliction of emotional distress); *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (finding that racial harassment, like the use of the n-word, is reprehensible but insufficient to constitute outrageous conduct); *Monroe v. Wells Fargo Bank, N.A.*, 2019 WL 2498698, at *3–4 (S.D. Fla. Mar. 6, 2019) (ruling that refusing to service and calling the police on a customer based on an unfounded accusation of fraud do not rise to the level of outrageousness required by Florida law).  Therefore, a review of Florida law demonstrates that Plaintiffs' allegations of Defendant's conduct fall below other instances where Florida courts declined to find certain examples of racial animus and discrimination sufficiently "outrageous," extreme or atrocious.  Accordingly, considering the

circumstances alleged and the governing law, the Court dismisses Plaintiffs' intentional infliction of emotional distress claim pursuant to Rule 12(b)(6) with prejudice as further amendment would be futile.

## IV. CONCLUSION

In sum, having carefully reviewed the Motion, the record, and for the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Partial Motion to Dismiss Plaintiffs' Amended Complaint (DE 20) is **GRANTED IN PART AND DENIED IN PART**.

2. Count III of Plaintiffs' Amended Complaint (DE 15) is **DISMISSED WITH PREJUDICE**.

3. Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, Defendant shall file its responsive pleading to all remaining counts of the Amended Complaint **WITHIN FOURTEEN (14) DAYS** of the date of this Order.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 18th day of October, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE